# H. C. Snyder *v.* Edward R. Loy and James R. Loy, trading as Loy Bros., Appellants.

*Practice, C. P.— Trial—Qualified answer to points.*

Where points contain a proposition of law which depends for its proper application upon the determination of the question of fact, regarding which there is material dispute, it is not error for the trial judge to qualify his affirmance of the points by pointing out to the jury the duty imposed upon them of determining the disputed facts.

*Contracts—Joint and severable contracts defined.*

Where there is a purchase of different articles, at different prices, at the same time, the contract is severable as to each article, unless the taking of the whole was rendered essential, either by the nature of the subject-matter or by the acts of the parties.

*Practice, C. P.—Charge of court—Opinion of judge.*

While the judge may not decide a disputed question of fact when the affirmance of the points in its support or denial is sustained by reasonable proof, he may express his opinion respecting the evidence, and at times it is his duty to do so.

A charge will not be considered inadequate or biased when the comments upon the testimony do not appear one-sided or argumentative, and where the testimony of the defendants is carefully presented, together with the testimony of each witness in corroboration thereof and where the jury is positively instructed that if the theory of the defendants as stated was correct, the plaintiff could not recover.

Argued March 10, 1897.    Appeal, No. 16, March T., 1897, by defendants, from judgment of C. P. Perry Co., on verdict for plaintiff.   Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.    Affirmed.

Assumpsit to recover damages for alleged breach of parol contract. Before LYONS, P. J.

The facts sufficiently appear in the opinion of the Superior Court.

*Errors assigned* were: (1.) Answer to the second point of defendant: "2d. That the time is an essential element in the contract and to observe the time of performance was equally obligatory on the plaintiff and defendants as to the whole contract and if the jury believe that the plaintiff did not attempt to, or did not remove the thirty head of cattle on or before the 20th day of June, 1895, the said plaintiff cannot recover for any loss on said thirty head of cattle. *Answer:* That would be true if the contract was a divisible contract. But if you find that this contract was an entire contract and the plaintiff was to receive the whole of the fifty-five head of cattle, he was not bound to take the thirty head when the defendants failed to deliver him the first part of the cattle."

(2.) Answer to the third point of defendant: "3d. That the contract alleged by the plaintiff is severable and if the jury believe that the plaintiff did not comply with that part of the contract requiring him to remove the thirty head of cattle on or before the 20th day of June, 1895, then no recovery can be had for the loss on the said thirty head of cattle. *Answer:* We cannot affirm this point. As to whether this was an entire or divisible contract, or severable contract, depends upon the intentions of the parties at the time it was entered into and we submit the question to you to determine whether it was an entire contract, or whether it was a divisible contract, under all the evidence in the case, and if the contract is found by you to be a divisible, or severable contract, then this point would be correct."

(3.) Answer to the fourth point of defendant: "4th. The time being of the essence of the contract, if the jury believe that the plaintiff's failure to remove the thirty head of cattle at the time alleged, namely, on or before the 20th day of June, 1895, and that the defendants sold them at a loss, and said loss being certainly ascertained, can be set off as against any loss sustained by the plaintiff on the twenty-five head sold on the 3d day of June, 1895, to Aarons. *Answer:* We say to you, that the answer to this point depends upon whether this was an entire or

a severable contract, and if you find that it was an entire contract then this point would not be correct. If, on the other hand, the contract was a divisible one, then the law is correctly stated in the point."

(4.) Answer to the fifth point of defendant. "5th. That the plaintiff having failed to show under the statement that he was ready and willing to take the thirty head of cattle to be removed the 20th of June, 1895, and no averment in the said statement that the said defendants failed to keep and feed said cattle for the plaintiff until the 20th of June, 1895, there can be no recovery for any losses on said thirty head of cattle. *Answer:* Refused, unless you find that the contract was a severable contract."

(5.) In the following paragraph of the charge: "The first question, therefore, for you to determine in this case is, what was the contract between these parties? Did the plaintiff buy all of the fifty-five head of the said cattle? Was the contract an entire one, or was it a divisible contract? By an entire contract I mean, did the plaintiff agree to purchase the fifty-five head of cattle as one contract for one round consideration, although it was to be determined by the weight of the cattle, and did the defendants agree to sell the whole of the fifty-five head of cattle? Was that the intention at the time the contract was made between the parties? The plaintiff contends that it was and the defendants have not seriously denied this contention."

(6.) In the following paragraph of the charge: "Then, on the other hand, take this fact into consideration, that Mr. Loy learned that the cattle had been sold by Snyder to Walter and the price he was to get for them and he did not deny that he asked Mr. Snyder to increase the contract price of the cattle. when he was there looking at them in May, 1895, that he said to him: 'You have done well by these cattle, you made money on them and you ought to give me more money,' how much more I don't recollect, but the fact is there was something said about that; you recollect how much that was, that the contract at that time was talked over between them. Then again, consider the fact that he wrote a letter to Mr. Snyder on the first day of June, which came on Saturday, the last day of the first week in June, wanting to know when he was going to take

these cattle. The letter was written on Saturday, the first day of June, 1895, in which he wanted an immediate answer whether he was going to take the cattle or not; that letter by due course of mail reached its destination; I do not know whether there is a route across the mountain or not, you may know about that, but take into consideration the probability whether or not Mr. Snyder, living in Newville, would receive it, or could by any possibility have received it in time to have replied before Mr. Loy sold these cattle. Mr. Aarons appeared on the scene and purchased these cattle on Monday, I forget the exact hour, you will recollect it, but before night, and they were shipped away in the cars the day before Mr. Snyder came to receive them under his contract. Now what was the motive for making this sale so quickly? He knew that the time of the contract was claimed by Mr. Snyder and Mr. Walter to be the first week in June. The sale was quick, and he says he got no more money than he was to get from Mr. Snyder. What motive was there in doing that? Did he think that by selling the cattle in that way that Mr. Snyder had forfeited the $110 he had paid and he could keep it? Take all these things into consideration. Was he attempting to make a strict construction of a contract and thus reap the benefit of that $110 and keep it in his pocket, or was he acting honestly in accordance with the terms of the contract? Under all these circumstances you will weigh the evidence and look for the motives that actuated the parties one way and the other. Was there any motive for Mr. Snyder not to live up to his contract? Had he sold the cattle to Mr. Walter, as it is alleged he had, and as Mr. Walter testified he had, and that he had been paid the earnest money on account of that contract, and by reason of his failure to get the cattle from Loy he was sued for the money and had to pay it back? Take all these things into consideration and determine how the truth of this matter is."

(7.) In the following paragraph of the charge: "If the contract was, that Mr. Snyder was to take those cattle away during the week in which the first day of June occurred, then he did not comply with the contract on his part and he cannot recover. But if on the other hand, under the evidence in the case you find that the contract was, that these cattle were to be delivered in the first week of June and that Snyder came for the cattle

in that time, the latter of which is not disputed, then Mr. Snyder is entitled to recover the loss and damage which he sustained by reason of the failure of the defendants to deliver the cattle at that time, and if the contract was an entire one, and that is a question of intention which you must find from the evidence in the case, if you find that this was an entire contract, that Mr. Snyder bought the entire lot of cattle, although the price was to be measured by their weight at the time of delivery, and the defendants agreed to sell the entire lot of cattle and then failed to comply with their agreement to deliver them in the first week of June, the plaintiff is entitled to recover whatever damages he sustained by reason of the failure to perform the contract, and he would not be obliged to accept the thirty head of cattle which remained there on the terms of the contract. If the contract was an entire one, the defendants must perform their part, and if they failed to do it they could not ask the plaintiff to accept at their hands the remaining cattle which he alleges were inferior in quality and were not to him as valuable and profitable as those that were sold. So that you will consider all the evidence in the case, and if you find, as I have instructed you, that the contract was that the first lot of cattle were to be delivered in the week in which the first day of June occurred, then the plaintiff not having accepted them at that time, taken them away, cannot recover in this action."

*J. W. Wetzel*, with him *Charles A. Barnett*, for appellants.— A contract is severable when the part to be performed by one party consists of several distinct and independent items, and the price to be paid is apportioned to each item: 2 Parsons on Contracts, 517; 3 Am. & Eng. Ency. of Law, 925; Oil Co. v. Brewer, 66 Pa. 351. See also Fullmer v. Poust, 155 Pa. 275; McLaughlin v. Hess, 164 Pa. 570.

It is clear that the case was inadequately and unfairly submitted to the jury, and for the reasons assigned the case should be reversed with a new venire: Lerch v. Bard, 177 Pa. 197; Larzelere v. Tiel, 3 Pa. Superior Ct. 109.

*James M. Barnett* and *Chas. H. Smiley*, for appellee.—The contract was in parol and its construction was properly left to the jury: Holmes v. Oil Co., 138 Pa. 546; Hull v. R. R. Co., 1 Pa. Superior Ct. 651.

The question as to whether the contract is entire or severable depends upon the intention to the parties, such intention must be ascertained from the language employed and the subject-matter of the contract: Mining Co. v. Jones, 108 Pa. 55; Shaw v. Badger, 12 S. &. R. 275; Larkin v. Heckshur, 3 L. R. A. 137; Norrington v. Wright, 115 U. S. 188.

Where a contract of sale includes different items, if the agreement embraced the whole at the time it was made, although different prices were to be paid therefor, the contract is entire: Quigley v. De Haas, 82 Pa. 267; Shaw v. Badger, 12 S. & R. 275; Fessler v. Love, 43 Pa. 313.

While a judge may not decide a disputed question of fact, when the averments of the parties in its support or denial are sustained by reasonable proof, he may express his opinion respecting the evidence, and at times it is his duty to do so: Price v. Hamscher, 174 Pa. 73.

Appellants cannot complain of the inadequacy of the charge of the court below upon a point to which they do not see fit to direct the attention of the court, nor can the court be convicted of error in not giving instructions that were not requested by the defendants: Balph v. Bank, 179 Pa. 430; Com. v. Boschino, 176 Pa. 103.

OPINION BY WILLARD, J., April 12, 1897:

This was an action of assumpsit in the court below by H. C. Snyder against Edward R. Loy and James R. Loy, trading as Loy Brothers, to recover damages for an alleged breach of parol contract.

At the trial it was alleged on the part of Loy Brothers that in March, 1895, they had on hand for sale fifty-five head of cattle, thirty of which were in a barn near their house, fifteen at their lower barn and ten at a barn known as the Stein barn. That they sold to Snyder the cattle at the lower and Stein barns, twenty-five in number at $4.50 per hundred pounds, to be delivered " the week in which the 1st of June comes " (the 1st of June came on Saturday). That Snyder paid $110 on the contract. For the remaining thirty head they were to receive from Snyder $4.20 per hundred pounds for twenty thereof, and $4.50 per hundred pounds for ten thereof, the last lot to be delivered on or before June 20, 1895. That the week in which the 1st

of June came went by and Snyder did not come for the twenty-five cattle, and on Monday, the 3d day of June they were sold by them to another party at the same price. That they offered to deliver the remaining thirty head on or before the 20th of June. Snyder refused to accept the remaining cattle on the terms named.

On the other hand it was alleged by Snyder that he purchased from Loy Brothers fifty-five head of cattle under one contract, the consideration to be paid as follows : $100 cash down, the balance on delivery of all the cattle after being weighed at Loy's scales, $4.50 per hundred pounds to be paid for thirty-five of the best or higher grade, and $4.20 per hundred pounds for the balance. That he was to receive and Loy Brothers were to deliver one carload of the cattle during the first week in June which ended on the 7th. That the number constituting a car load was not specified, nor was there any agreement as to the grade of cattle to be taken first. That he paid $110 on the contract and soon afterwards sold the entire lot to Charles P. Walter at $5.25 per hundred pounds to be delivered at the time specified in his contract with Loy Brothers. That they were informed of the sale to Walter, and on June 5th in company with Walter he went to Loy Brothers for his first carload and was informed by them that twenty-five of the cattle had been sold and he, Snyder, could not have them but could have the remaining thirty, but must forfeit the $110 paid on the first lot. On these terms Snyder refused to take them.

The facts were found by the jury as alleged by Snyder.

From the evidence in this case on the part of the plaintiff it is apparent that he tried at first to purchase twenty-five of the very best of the cattle and did not want the whole lot. To this the defendants objected, refusing on their part to make the deal unless it included the entire lot. To this the plaintiff finally agreed resulting in the contract as found by the jury. The evidence is explicit that the defendants who made the bargain said " we would not sell them separate at all, but would sell the whole together." It is evident from this testimony and other testimony in the case that the jury was warranted in finding that the plaintiff undertook to buy and the defendants to sell the fifty-five cattle as one herd, to be delivered in part during the first week of June and the balance on or before the twentieth of that

month. The consideration was to be paid on delivery of the whole except as to the immediate payment of $100, and the amount of the consideration was to be computed at so much per hundred weight of the entire live weight of the whole lot when properly ascertained on scales. Thirty-five were graded higher than the remaining twenty, and in arriving at the total price, each hundred weight of the former was to be multiplied by $4.50 and the latter by $4.20.

It is alleged that the learned trial judge submitted to the jury the abstract question whether the contract was entire or severable, when he should have declared the law himself. This he could not have done under the circumstances of the case for the reason, as the facts were found on the one side or the other, so must the character of the contract be determined. Had the jury found the facts as testified to by Edward R. Loy that the cattle in the lower and Stein barns, twenty-five in number, were sold for $4.50 per hundred weight, to be delivered on or before June 1, and the cattle in the home barn, thirty in number, at another price, to be delivered on or before June 20th without further explanation than that given in his testimony, the jury would have been warranted under the charge of the court in finding a severable contract. But under the plaintiff's theory, which they evidently believed and adopted, the jury were fully warranted in finding the transaction an entire contract. Under the conflicting testimony in the case the trial judge committed no error in saying to the jury: "The first question for you to determine in this case is, what was the contract between the parties? Did the plaintiff buy all of the fifty-five head of the said cattle? Was the contract an entire one or was it a divisible contract? By an entire contract I mean, did the plaintiff agree to purchase the fifty-five head of cattle as one contract for one round consideration, although it was to be ascertained by the weight of the cattle, and did the defendants agree to sell the whole fifty-five head of cattle?" This was a fair presentation of the case to the jury and they were fully instructed as to what was meant by an entire contract. The second, third, fourth and fifth points put by the defendants to the court were properly answered. Without the aid of the jury the court could not determine the facts upon which the points were predicated. In Hull & Co. v. R. R. Co.,

1 Pa. Superior Ct. 651, this court held: "where points contain a proposition of law, which depends for its proper application on the determination of questions of fact, regarding which there is a material dispute, it is not error for the trial judge to qualify his affirmance of the points by pointing out to the jury the duty imposed upon them of determining the disputed facts."

The cattle in question were of different sizes and grades, some good and some inferior. To take the whole at the agreed price might have been desirable, but to separate the inferior would tend to render them undesirable and unsalable. "The contract may be entire or severable according to the circumstances of each particular case ; it has been said in speaking of contracts of sale, the criterion is to be found in the question whether the whole quantity—all of the things as a whole—is of the essence of the contract. If it appears that the purpose was to take the whole or none, then the contract would be entire ; otherwise, it would be severable. It is sometimes difficult to determine whether the contract is entire or severable, in such cases, and there is great diversity of decision on the subject; but, on the whole, the weight of opinion and the more reasonable rule would seem to be that, where there is a purchase of different articles, at different prices, at the same time, the contract would be severable as to each article, unless the taking of the whole was rendered essential either by the nature of the subject-matter. or by the act of the parties: " Clark on Contracts, page 657. The rule above stated is sustained by the decisions in Pennsylvania, among which are : Shaw v. Badger, 12 S. & R. 275 ; Quigley v. DeHaas, 82 Pa. 267 ; Carmalt v. Platt, 7 Watts, 318.

After a careful review of all the testimony in connection with the judge's charge, we cannot say the charge was inadequate or biased. The comments upon the testimony do not appear one-sided or argumentative. The testimony of the defendants is carefully presented, together with the testimony of each witness in corroboration of the defendants. The jury were positively instructed that if the theory of the defendants as stated was correct, the plaintiff could not recover.

It is said by appellants' counsel that the learned trial judge misquoted to the jury the alleged conversation between Edward Loy and Snyder. Such misquotations, if made and are material,

should be corrected, and we have carefully examined the record and find the quotation as follows : " You have done well by these cattle, you made money on them, and you ought to give me more money." The evidence was as follows : (Evidence of Snyder.) " He (Loy) says, couldn't you make them cattle in the stable $4.25 which you have bought at $4.20 ? And I says, I can't do that." (Evidence of C. P. Walter.) " Loy said to Snyder, I hear you have done well on these cattle and you ought to give me five cents a hundred for doing so well, and Mr. Snyder said, " No, I can't do that, or I couldn't do that, but if you want more money on the cattle I will pay you some more money." The language quoted, when compared with the testimony is not open to the harsh criticism of appellants' counsel that "no witness so testified, nor is there any testimony which would justify this quotation." The fact that on Saturday, the 1st day of June, Loy Brothers wrote to Snyder as to what he intended to do with the cattle, demanding a reply by wire at a place where there was no regular telegraph station, followed by a sale on the following Monday to another party was a circumstance that ought to have been called to the attention of the jury, and the judge committed no error in so doing. Comments of the judge upon the testimony of the plaintiff and his witnesses perhaps occupied more time than was devoted to the appellants and their witnesses. But we discover no unnecessary or uncalled for comments upon the whole testimony, and the charge taken as a whole is not open to the criticism of being argumentative or biased. It is within the rule of Price v. Hamscher, 174 Pa. 73, and cases there cited.

The specifications of error are all overruled and the judgment affirmed.